Peter La Coss and Charles La Coss v. Daniel F. Wadsworth, George W. Hayden and Marshall F. Barber.

*Estoppel—Relation—Tax-title—Remedy at law.*

1. Where both parties to a conveyance of land that is mortgaged suppose that a title in fee is being transferred, though in fact it is not, and the grantor afterwards purchases the land at the foreclosure sale, he is bound in equity to recognize the grantee's right to a perfected title. And if he farther becomes a party to an arrangement whereby a third person takes a deed from the grantee and gives back a mortgage that he, the grantor, disposes of for his own purposes, he is then estopped from disputing that his original deed conveyed title and that his foreclosure purchase related back to it.

2. Possession of a tax-title does not necessarily prevent one from relying on an equitable title, and compel him to seek a remedy at law: it is when it appears upon his case in equity that he has such remedy, that the court in chancery should remit him to it.

3. Whether the record of a tax-title is constructive notice that the holder claims the land on which it rests—Q.

4. A remedy at law by an action of ejectment is inadequate where a judgment would still leave complainant's title clouded.

Appeal from Marquette.   (Grant, J.)   Jan. 20.—April 9.

Bill to clear title.   Defendants appeal.   Affirmed.

*W. P. Healy* for complainants, as to the right to an equitable remedy: *Rowland v. Doty* Har. Ch. 3; How. Stat. §

6626; *Hall v. Kellogg* 16 Mich. 138; *Edsell v. Briggs* 20 Mich. 429; *Donahue v. Klassner* 22 Mich. 253; *Eaton v. Trowbridge* 38 Mich. 457; Story Eq. Pl. § 283, *n.* 2; §§ 531–7; *Wells v. Partridge* 31 N. J. Eq. 366; *Hammontree v. Lott* 40 Mich. 193; *F. & P. M. R. R. Co. v. Gordon* 41 Mich. 426; *McKibbin v. Bristol* 50 Mich. 319; possession of a mortgager is notice of his title: *Disbrow v. Jones* Har. Ch. 48; *Doyle v. Stevens* 4 Mich. 92; *Rood v. Chapin* Walk. Ch. 79; *Norris v. Showerman* 2 Doug. 17; *Converse v. Blumrich* 14 Mich. 120; *Hommel v. Devinney* 39 Mich. 523; *Cunningham v. Pattee* 99 Mass. 252; *Kerr v. Day* 14 Penn. St. 112; *Reeves v. Ayers* 38 Ill. 423; *Watters v. Connelly* 59 Iowa 217; *McKee v. Wilcox* 11 Mich. 358; *Willcox v. Hill* 11 Mich. 256.

*Geo. W. Hayden* and *Isaac Marston* for defendants. In the following cases possession is held to be no notice: *Cook v. Travis* 20 N. Y. 402; *Bloomer v. Henderson* 8 Mich. 395; *Dawson v. Danbury Bank* 15 Mich. 489; *Rogers v. Jones* 8 N. H. 264; *Fassett v. Smith* 23 N. Y. 252; *Jones v. Smith* 1 Hare 43; *Scott v. Gallagher* 14 Sergt. & Rawle 333; *Harris v. Arnold* 1 R. I. 126; *Vaughn v. Tracy* 22 Mo. 415; *Hewes v. Wiswell* 8 Greenl. (Maine) 94; *Emmons v. Murray* 16 N. H. 385; possession, to be notice, must be such as to make the inference of knowledge a necessary consequence: *M'Mechan v. Griffing* 3 Pick. 149; *Newhall v. Pierce* 5 Pick. 450; it is not enough simply to put one on inquiry: *Fort v. Burch* 6 Barb. 60; 4 Kent. (11th ed.) 171; *Tuttle v. Jackson* 6 Wend. 226; *Jackson v. Van Valkenburgh* 8 Cow. 260; *Jackson v. Given* 8 Johns. 137; *Doe v. Reed* 4 Scam. 117; a mortgage not in the line of title does not affect it: *Leiby v. Wolf* 10 Ohio 83; *Tarbell v. West* 86 N. Y. 288; *Le Neve v. Le Neve* 2 Lead. Cas. in Eq. 21; *Murray v. Ballou* 1 Johns. Ch. 566; *Bates v. Norcross* 14 Pick. 224; *Lightner v. Mooney* 10 Watts 407; *Hetherington v. Clark* 30 Penn. St. 393; *Killun v. Smith* 33 Penn. St. 158; *Carter v. Williams* L. R. 9 Eq. 678; *Maul v. Rider* 59 Penn. St. 170–1; *Ely v. Wilcox* 20 Wis. 529–30; *Long v. Dollarhide* 24 Cal. 218; *Bates v. Norcross* 14 Pick. 231; where a party purchases land in possession of a third person, *with a knowledge of that fact*, he takes it subject to all equities existing between his vendor and the person in possession: *Rood v. Chapin* Walk. Ch. 79; *Godfroy v. Disbrow* id. 260; *Disbrow v. Jones* Har. Ch. 55; *McKee v. Wilcox* 11 Mich. 361; *Woodward v. Clark* 15 Mich. 112;

*Russell v. Sweezey* 22 Mich. 236 ; *Hommel v. Devinney* 39 Mich. 523 ; but the rule does not apply where the purchaser did not know that such third person was in possession : *Duval v. Bibb* 4 Hen. & Munf. 120 ; *Hubbard v. Smith* 2 Mich. 207 ; this question of ignorance of possession was expressly reserved in *Bloomer v. Henderson* 8 Mich. 405, but decided in *Allen v. Cadwell* 55 Mich. 8 ; there must be bad faith, a designedly abstaining from making inquiries, for the very purpose of avoiding knowledge : *Larzelere·v. Starkweather* 38 Mich. 107 ; *Stetson v. Cook* 39 Mich. 753 ; the cases in Michigan are full and clear that interests in lands shall not be created or transferred otherwise than by deed : *Wright v. DeGroff* 14 Mich. 164 ; *Hayes v. Livingston* 34 Mich. 384 ; *Nims v. Sherman* 43 Mich. 45 ; *Shaw v. Chambers* 48 Mich. 355.

Cooley, C. J.  As we view this case it presents questions of fact almost exclusively.

The purpose of the bill is to quiet the title of complainants to certain lands in the county of Marquette.  The bill avers that on June 21, 1876, Buel S. Bigelow and Alexander W. Myers, of Ishpeming, executed to complainants a deed of the lands in consideration of the sum of $1309.03, which complainant Peter was to pay to Myers & Bigelow, who were then doing business as partners, and that said Peter gave back to Myers & Bigelow a mortgage for said purchase price, and that both the deed and the mortgage were placed on record.

That the deed was represented by the grantors to be a warranty deed, and was on a printed form containing the words "Warranty Deed" in large letters on the outside, and the words "Warranty Deed, Covenant—Own Act," on the upper margin inside, and was, as complainants afterwards learned, only a quitclaim deed calculated to impose on the unwary.

That complainant Peter learned, soon after the giving of said mortgage that the lands were, with a large quantity of other lands, covered by a mortgage of over a hundred thousand dollars, executed by the Morgan Iron Company to Richard S. Fay and Peter White, trustees, which mortgage

was a valid lien on the lands so conveyed to complainant Peter at the date of conveyance.

That on learning of the Fay and White mortgage Peter informed Myers & Bigelow· he would pay nothing on his mortgage until they cleared his title of such incumbrance; that Myers & Bigelow had purchased the lands of the Morgan Iron Company, and after being notified that they must clear the title, they concluded to purchase the lands again at the foreclosure sale when made under the Fay and White mortgage.

That the last-mentioned mortgage was foreclosed and the lands sold under the same January 22, 1878, the lands so deeded to said Peter were struck off and deeded to Myers & Bigelow, and complainants were notified by them that the lands were now free from all incumbrances.

That thereupon an arrangement was made whereby complainant Charles La Coss was to take the lands from Peter and assume the payment of the purchase price, and Myers & Bigelow canceled the mortgage from Peter; Peter gave a quitclaim deed of the land to Charles, and Myers & Bigelow took from Charles a mortgage for $1530.41 for the purchase price thereof and said Myers, acting for both, then represented to said Charles that he now had a perfect title subject only to said last-mentioned mortgage. That said Myers took both the deed and the mortgage and caused them to be recorded, and then returned the deed in a letter signed by the firm, stating therein that it completed the title subject only to the mortgage in their favor, but making claim for a small sum paid by them for taxes the first year Peter had the lands.

That complainants resided on the lands before and at the time of the purchase from Myers & Bigelow. That on July 14, 1880, Charles conveyed to Peter an undivided half thereof, and on May 13, 1882, complainants gave to Gibson & Hirschman a mining lease to mine ore on said lands for a term of years for a royalty, under which the lessees expended $10,000 in exploring for iron ore, and finally discovered a

large and valuable mine which is well known in Marquette county as the " La Crosse Mine."

That defendants knew of such discovery, and knew that complainants were residing on said land claiming the same in fee ; nevertheless Myers & Bigelow intending to defraud complainants and Gibson & Hirschman have given to the defendants deeds of said lands with covenants of warranty against their own acts, for the nominal sum of $7000, the defendants well knowing that by the discovery of the mine the lands had become worth at least $50,000.

That the defendants now claim the lands in fee, pretending that such title as was conveyed by Myers & Bigelow to Peter was cut off by the foreclosure sale, and that the deed on that sale to Myers & Bigelow vested in them a new title which has now passed to defendants. In opposition to which claim complainants say that the transaction whereby Peter conveyed to Charles and Myers & Bigelow took a mortgage from Charles and canceled the one from Peter, was six weeks after the foreclosure sale, and that Myers & Bigelow assigned the mortgage from Charles to F. G. Bigelow on July 6, 1878, and in the assignment recited that the mortgage was given for purchase money of the lands described therein ; that this assignment was recorded, and the record was constructive notice to defendants.

That Myers & Bigelow, before forming the design to defraud complainants did actually execute a quitclaim deed to complainants and deliver it to a third person to be unconditionally delivered to complainants, but that the deed has not come to complainants' possession, and they are at present unable to find it, and may be unable to prove its delivery as a defense to an action of ejectment.

That defendant Wadsworth, claiming an undivided nine-tenths of the lands has brought suit in ejectment to recover the same, and the suit is now at issue, and the other defendants threaten to bring similar actions.

That the following instruments have also been duly executed and placed upon record : A mortgage by complainant Charles to Hirschman & Gibson for $1000, dated December

23, 1881; a contract of option from said Charles to Alfred Kidder, dated September 3, 1879, for the sale of said lands to him for $5000; tax deeds of said lands from the Auditor General to said Kidder, dated April 6, May 19, and August 5, 1880, and a deed from Kidder to complainants of said lands dated November 16, 1881.

The prayer of the bill is that suits at law be restrained; that defendants be decreed to convey to complainants the title received by them from Myers & Bigelow, and that complainants be decreed to be owners in fee-simple of the lands, with the usual prayer for other and further relief.

Defendants appeared and answered fully, and without giving the substance of the answer in detail, it will be sufficient to state a few of the leading averments.

Defendants admit the giving of the deed from Myers & Bigelow to Peter La Coss, but deny all deception, and deny that it was meant to convey a complete title. On the contrary, they say complainants had previously bargained with the Morgan Iron Company for the land but could not obtain the title. That Myers & Bigelow were creditors of the company and endeavoring to obtain a lien for the payment of their debt, and the whole arrangement whereby Myers & Bigelow were to and did receive a deed from the company, and then convey to Peter and receive from him the purchase money, was entered into in recognition of the claim of Peter upon the company for a title such as the company could then convey, and at the special instance and request of said Peter and for his convenience; and Myers & Bigelow acted merely as the irresponsible medium or channel for transferring from the company to Peter such title as the company then had.

That Peter was made a defendant in the Fay and White foreclosure and the rights of himself and his grantee Charles, were thereby foreclosed. That Myers & Bigelow bought as they rightfully might at the foreclosure. That the arrangement whereby Peter conveyed to Charles, and Myers & Bigelow discharged Peter's mortgage and took one from Charles, was one for the purposes of complainants exclusively,

and Myers, in what he did in respect to it was acting merely as agent without reward, and for the accommodation of complainants.

And defendants deny knowledge of any equities in complainants at the time of receiving conveyance themselves, and knowledge of complainants' possession; aver that they purchased in good faith and for value, as they lawfully might, the title at the time being in Myers & Bigelow.

The circuit judge granted the relief prayed, and the defendants appealed.

The evidence occupies nearly three hundred printed pages, and the argument upon it has been full, elaborate and able. We are satisfied, on a review of the evidence since the hearing, with the briefs before us, that the complainants have made out their case on all essential points, and are entitled to an affirmance of the decree. A few of the points made by defendants on the argument will be briefly noticed.

1. It appears to be true as alleged on the part of the defence that complainants had bargained for the land with the general agent of the Morgan Iron Company, and had gone into possession, but that the agent could give no title, and the arrangement made by Myers & Bigelow whereby they deeded to Peter, and were to receive pay from him was one for the mutual accommodation of Peter and themselves; Peter obtaining his deed, and Myers & Bigelow obtaining, to the extent of the purchase price, a payment on the indebtedness of the Morgan Iron Company to them. It is also true that the Morgan Iron Company did not then have the complete title and the deed to Peter did not convey it; but the claim which defendants made on the argument that it was not understood Peter was to have anything beyond a surface right to the land for agricultural purposes and for the wood, is not sustained by the evidence. On the contrary, we are satisfied that Myers & Bigelow as well as Peter, understood when they deeded to him that they were conveying and he was paying for the fee of the land, and afterwards, when they purchased at the foreclosure sale, they in equity and justice were bound to recognize the right of Peter to a title

from them. When afterwards, they became parties to the arrangement, whereby Charles received a deed from Peter and gave to them a mortgage which they disposed of for their own purposes, they became in equity, as we think, effectually estopped from disputing that the deed they had given to Peter, and which purported to convey the title did so in fact, and that their purchase at the foreclosure sale related back to and supported it.

2. It is said that the claims of complainants by their bill are inconsistent and destroy each other. This argument is based mainly on the recital in the bill respecting the tax titles which had been conveyed to complainants. It is said with truth that a tax title overrides all others, and that to insist upon equities antedating a tax title, while claiming the tax title also, is to make inconsistent claims. But complainants do not by their bill, expressly make any claim under the tax titles; they merely recite their existence and the record of them. We infer the purpose to have been merely to show that by their being upon record the defendants had constructive notice that complainants were claiming the land. Whether the record could be of any value to that effect we do not find it important to decide in this case; but we have no doubt of the right of a party who claims an equitable title to lands to plant his case upon it if he sees fit to do so, even though he may have a tax title.

3. It is said that complainants, on the case made by their bill have a full and adequate remedy at law. They certainly would have upon the tax titles if they should prove valid. Unfortunately, as is well known, the officers connected with the administration of tax laws are so wanting in care and particularity in the performance of their duties that tax titles are more relied upon as supports to other titles than as independent and undoubted titles in themselves; and no court of equity would for a moment consider the proposition that a party having a good equitable case should be turned out of court because it appeared that he had a tax title which, if valid, would support a remedy at law. It is when, upon the equitable claim which the complainant relies upon it can be

seen that he has a remedy at law, that the court of chancery should turn him over to it.

Upon the equitable case the complainants set up, a remedy at law, if they have any, would be inadequate, because the legal title derived through the Morgan Iron Company appears to be in the defendants, and recovery in ejectment would still leave the title of complainants clouded.

4. The claim of defendants that they are purchasers in good faith and without notice of the rights of complainants is not made out.   There is proof of the fact stated in the bill that after the foreclosure sale Myers & Bigelow executed a deed to complainants which they left with a third party, intending it should be delivered, and that some of the defendants, if not all of them, were aware of the fact.   There is also satisfactory evidence that defendants knew of the possession of complainants, or at least, had such notice thereof as must have left them in no doubt ; and that they also had notice that complainants claimed to be owners of the land. The defendants seem to have taken their conveyance in the expectation of a contest, and in the hope that they would establish the fact that complainants, if they had a right in law to hold anything, were entitled only to surface rights, and the grantees of Myers & Bigelow subsequent to the foreclosure sale could hold all rights of mining.   This was a speculation on the part of the defendants ; and, as in other cases of speculation, they took it with all attendant elements of uncertainty, which in this case were ample for its defeat.

Decree of affirmance will be ordered.

The other Justices concurred.